# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SOUTHERN OWNERS INSURANCE COMPANY,**

      Plaintiff,

v.

    Case No: 8:15-cv-01440-EAK-AAS

**GALLO BUILDING SERVICES, INC., KB HOME TAMPA, LLC, KB HOME ORLANDO, LLC, AND KB HOME FORT MYERS, LLC,**

      Defendants.

_____

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of the Motion for Summary Judgment filed by Defendants KB Home Tampa, LLC, ("KB Home Tampa"), KB Home Orlando, LLC, ("KB Home Orlando"), and KB Home Fort Myers, LLC, ("KB Home Fort Myers") (collectively, "KB Homes"), (Dkt. 61), the accompanying Statement of Undisputed Facts filed by KB Homes, (Dkt. 62), the Response in Opposition to KB Homes' Motion for Summary Judgment filed by Plaintiff, Southern Owners Insurance Company, ("Southern"), (Dkt. 74), the Motion for Summary Judgment filed by Southern, (Dkt. 64), the accompanying Statement of Undisputed Facts filed by Southern, (Dkt. 65), the Response in Opposition to Southern's Motion for Summary Judgment filed by KB Homes, (Dkt. 75), the accompanying Statement of Disputed Facts filed by KB Homes, (Dkt. 76), the Supplemental Authorities filed by KB Homes, (Dkts. 81 and 86), and the Response in Opposition thereto filed by Southern, (Dkt. 82).

Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendants KB Homes' Motion for Summary Judgment, (Dkt. 61), and **DENIES** Plaintiff Southern's Motion for Summary Judgment, (Dkt. 64).

I.    **BACKGROUND**

    **A. Insurance Policies**

Southern issued a series of primary commercial general liability ("CGL") policies to Defendant Gallo Building Services, Inc. ("Gallo"), effective from December 31, 2009 through December 31, 2012 (collectively, the "CGL Policies").[1] (Dkt. 30 at 2; Dkt. 65 ¶ 15; Dkt. 76 ¶ 15). The parties agree that the relevant coverage provisions under the Insurance Policy are as follows:

1. The Insuring Agreements provide, in part, that "[Southern] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. [Southern] will have the right and duty to defend the insured against any 'suit' seeking those damages." (Dkt. 62 ¶ 25; Dkt. 65 ¶ 15).

2. "Property damage" is defined in the CGL Policies to include "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . ." (Dkts. 62 ¶ 26, 65 ¶ 25). The CGL Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkts. 62 ¶ 27, 65 ¶16).

---

[1] According to KB Home, the parties have not fully resolved their dispute regarding the production of complete and accurate copies of all of the policies issued by Southern to Gallo. (Dkt. 62 at 6 n. 1). KB Homes claims to be in possession of multiple versions of the CGL Policies; however, KB Homes asserts that the differences in the versions of the CGL Policies are not material to Southern's alleged duty to defend as the relevant language is identical. Id.

The parties agree that CGL Policies contain the following relevant coverage exclusions:

1. The Damage to Your Work Exclusion ("Your Work Exclusion") excludes coverage for "property damage to [Gallo's] work arising out of it or any part of it and included in the products-completed operations hazard." (Dkts. 62 ¶ 28, 65 ¶ 15) (internal quotations omitted). The CGL policies' "your work" definition includes "[w]ork or operations performed by [Gallo] or on [Gallo's] behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." (Dkts. 62 ¶ 29, 65 ¶ 16). The "products-completed operations hazard," as used in the Your Work Exclusion, includes all "property damage occurring away from premises [Gallo] own[s] or rent[s] and arising out of . . . [Gallo's] work except . . . work that has not yet been completed or abandoned." (Dkts. 62 ¶ 30, 65 ¶ 16).

2. The Exterior Finishing System and Stucco Exclusion ("Stucco Exclusion") bars coverage for "any claim, 'suit,' action or proceeding for . . . 'property damage' . . . which is in any way related to or arising out of any 'exterior finishing system' or exterior 'stucco' application." (Dkts. 62 ¶ 31, 65 ¶ 17). The policy defines "exterior finishing system" as "an exterior insulating and finishing system applied to the exterior of a structure which incorporates any synthetic stucco or material similar in substance or purpose, and which may also include: insulating board or other material; adhesive or mechanical fasteners; and the applications of flashings, coatings, caulking or sealants. (Dkt. 65 ¶ 17). "Stucco" is defined in the CGL Policy as "a material made of Portland cement; sand, cement, line,

and/or plaster, or any combination thereof, applied as a hard covering for exterior walls." (Dkt. 65 ¶ 15).

According to KB Homes, Southern also issued five commercial umbrella policies to Gallo between June 8, 2008 and December 31, 2011, (collectively, the "Umbrella Policies").[2] (Dkt. 62 ¶ 32). The coverage provisions in the Umbrella Policies state, in relevant part, "[Southern] will pay those sums included in the ultimate net loss that the insured becomes legally obligated to pay as damages because of . . . [p]roperty damage . . . to which this insurance applies caused by an incident." Id. ¶ 33. The defense and settlement payments provisions in the Umbrella Policies state, in relevant part: "[w]hen underlying insurance does not apply to an incident which is covered by this policy, [Southern has] the right and duty to defend any suit against the insured seeking damages on account of . . . property damage . . . ." Id. ¶ 34. "Property damage" has the same definition in the Umbrella Policies as in the CGL policies, to include "[p]hysical injury to tangible property, including all resulting loss of that property." Id. ¶ 35. Additionally, all Umbrella Policies contain an exclusion for property damage to the insured's work. Id. ¶¶ 37-39. According to KB Homes, two of the Umbrella Policies do not contain a stucco exclusion and the remaining two Umbrella Policies contain stucco exclusions that are identical to the exclusions in the CGL policies, except that they only apply if construction began on or after June 8, 2009, or, on or after December 31, 2010. Id. ¶¶ 41-44.

---

[2] Southern does not dispute the existence of additional policies but argues against their relevance in the instant matter. (Dkt. 74 at 16). A discussion of the Umbrella Policies' relevance to the instant action is in Section III. D., *infra*.

### B. Underlying Action

Gallo entered into a master subcontract with KB Home Tampa related to, among other things, the construction of the Willowbrook Condominium Project (the "Project"), a 51-building, 270-unit condominium project located in Manatee County, Florida. (Dkt. 4-1 ¶ 44; Dkt. 62 ¶ 6; Dkt 65 ¶ 1; Dkt, 76 ¶ 1). KB Home Tampa was the developer for the Project and served as contractor for certain portions of the Project. (Dkt. 4-1 ¶ 44). KB Home Fort Myers and KB Home Orlando served as contractors for certain other portions of the Project. Id. "[A]ll of the work at the Project was subcontracted out by KB Homes to subcontractors, suppliers and material men." Id. ¶ 45. Following the completion of construction and turnover of control of the Project to the individual unit owners, Willowbrook Condominium Association, Inc. (the "Association") engaged an engineering firm to perform a turnover study at the Project. Id. ¶ 46. The Association's engineering firm published its report on November 21, 2011 (the "Karins Report"), which identified a number of alleged construction defects and deficiencies at the Project. Id. The Association served a Chapter 558 Notice[3] transmitting the Karins Report to KB Homes on November 30, 2011, asserting various claims related to construction defects at the Project. Id. ¶ 47. In turn, KB Homes notified the subcontractors and designers of these claims and tendered its defense. KB Homes' tender was not accepted. Id.

KB Homes commenced an investigation of the Association's raised claims and discovered additional non-conforming work performed by subcontractors. (Dkt. 4-1 ¶ 48).

---

[3] Chapter 558 of the Florida Statutes, also referred to as the Florida Construction Defect Statute, requires owners to send a "notice of claim" to developers, contractors, subcontractors, suppliers, and/or design professionals identifying any alleged construction and/or design defects in "reasonable detail" before any litigation or arbitration for construction defects may be initiated.

The work of the subcontractors was "deficient within, and without limitation, the following systems:

- Substitutions in the size of the Hurri-Bolt system;

- Wall panel connections;

- Wall panel, balcony column and balcony deck strapping;

- Deck waterproofing;

- House wrap and flashings at rough openings and windows;

- Sealants at perimeter edge of windows and SGDs;

- Stucco is not installed in accordance with the requirements outlined on the Design Documents, fail to comply with ASTM C926, C1063 and applicable requirements."

Id.

KB Homes incurred significant costs to investigate and repair the defective work and resulting property damage at the Project, as well as significant costs to relocate residents during the course of repairs. (Dkt. 4-1 ¶ 53). KB Homes filed suit against Gallo and other subcontractors in the underlying state court action, KB Home Tampa, LLC, et. al. v. A&D Plus Construction Services, Inc., et. al., 2013 CA 002679, in the Twelfth Judicial Circuit in and for Manatee County, Florida (the "Underlying Action"). In the Underlying Action, KB Homes' Third Amended Complaint and Demand for Jury Trial (the "Underlying Complaint") includes 169 pages, 795 paragraphs and 158 Counts against approximately three dozen subcontractors and designers, including Gallo, in relation to their allegedly defective work on the Project, which, "caused damage to other building components,

damage to other property, loss of use, and . . . relocation of residents of [Willowbrook Condominiums]." (Dkt 41-1; Dkt. 30 at 1-2; Dkt. 74 ¶ 4).

The Underlying Complaint asserts the following causes of action against Southern's named insured, Gallo, as follows:

- Count 49-Breach of Contract, Breach of Express and Implied Warranty, and Breach of Duty to Defend and Indemnify;

- Count 50-Negligence;

- Count 51-Breach of Statutory Warranty;

- Count 52-Common Law Indemnity; and

- Count 53-Statutory Cause of Action pursuant to section 553.84 of the Florida Statutes.

(Dkt. 4-1 ¶¶ 283-305).

Specifically, the Underlying Complaint alleges that Gallo engaged in the following alleged defects:

a.　　Failing to install all necessary and appropriate control joints;

b.　　Installing incorrect mid-wall flashing and other missing and/or improperly installed accessories;

c.　　Failing to lap lath properly;

d.　　Using incorrect sized staples that do not penetrate the framing members the minimum of 3/4 inch per Code;

e.　　Installing stucco in direct contact with dissimilar materials;

f.　　Installing the incorrect weep screed flashing at the stucco stops at the elevated decks;

g.      Improper embedment of and thickness of stucco;

h.      Installing wall panels with gaps;

i.      Installing wall panels without nickel gaps;

j.      Failing to install top plate splice per plan;

k.      Failing to nail sheathing into top of double top plate;

l.      Failing to install sheathing on inside face of wall panels on second floor front and rear elevations;

m.      Failing to nail rimboard per structural drawings; and

n.      Failing to install sp2's at each stud per structural drawings and failing to install LVL headers to full depth in certain locations.

(Dkt. 4-1 ¶¶ 292, 305).

On June 18, 2015, Southern filed a Complaint for Declaratory Judgment in the District Court for the Middle District of Florida seeking a declaration that Southern has no duty to indemnify or defend Gallo according to its policies of liability insurance in connection with the Underlying Action. (Dkt. 1). Specifically, Southern alleges that it owes no duty to defend Gallo in the Underlying Action because the Underlying Complaint does not allege property damage as defined in the CGL Policies, the Your Work Exclusion bars coverage, and the Stucco Exclusion bars coverage. Id.

Gallo has since been administratively dissolved by the Florida Department of State Division of Corporations. (Dkt. 30 at 2). Southern moved for the entry of a final declaratory judgment after a default was entered against Gallo. (Dkt. 15). This Court granted that motion and entered a judgment declaring that Southern owed no duty to defend or indemnify Gallo under any polices of liability insurance in connection with the

Underlying Action. (Dkts. 18, 19). KB Homes moved to set aside the default judgment, (Dkt. 25), which this Court did. (Dkt. 30). Subsequently, Defendants KB Homes moved for summary judgment in favor of Gallo and KB Homes seeking a declaration that Southern owes a duty to defend Gallo in the Underlying Action, (Dkt. 61), and Southern filed an opposing Motion for Summary Judgment. (Dkt. 64).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations

unsupported by facts. <u>Evers v. Gen. Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.  DISCUSSION

### A. Legal Standard for an Insurer's Duty to Defend

Under Florida law,[4] "an insurer's duty to defend is determined solely by the allegations in the underlying complaint." <u>Zurich Am. Ins. Co. v. S.-Owners Ins. Co.</u>, 314 F. Supp. 3d 1284, 1291 (M.D. Fla. 2018) (citing <u>Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.</u>, 76 So.3d 20, 23 (Fla. 1st DCA 2011); <u>Lawyers Title Ins. Corp. v. JDC (Am.) Corp.</u>, 52 F.3d 1575, 1580 (11th Cir. 1995)). "The actual facts of the situation are not relevant, such that 'the insurer must defend even if facts alleged are actually untrue or legal theories unsound.'" <u>Zurich</u>, 314 F. Supp. 3d at 1299 (quoting <u>Lawyers Title Ins. Corp.</u>, 52 F.3d at 1580). An insurer's duty to defend is a broad obligation and the underlying complaint need only "allege facts which fairly bring the case within coverage even though ultimately there may be no liability on the part of the insured." <u>Trizec Props., Inc. v. Biltmore Constr. Co., Inc.</u>, 767 F.2d 810, 811 (11th Cir. 1985). And, "[i]f the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." <u>Baron</u>

---

[4] The parties do not dispute that Florida law applies to their rights and obligations under the CGL Policies because the policies were executed and delivered to Gallo in the state of Florida. (Dkt. 64 at 7-8) <u>See also</u> <u>Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.</u>, 363 F.3d 1089, 1091 n.1 (11th Cir. 2004) ("the laws of the jurisdiction where the contract was executed governs interpretation of the substantive issues regarding the contract") (quoting <u>Lumbermens Mut. Cas. Co. v. August</u>, 530 So.2d 293, 295 (Fla. 1988)).

Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 814 (Fla. 1st DCA 1985); Voeller Constr., Inc. v. Southern-Owners Ins. Co., No. 8:13-cv-3169, 2014 WL 1779289, at *2 (M.D. Fla. Mar. 5, 2014).

Moreover, "[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007). The insured bears only the initial burden of showing that the basic insuring agreement of the policy at issue is triggered. See U.S. Concrete Pipe Co. v. Bould, 437 So. 2d 1061, 1065 (Fla. 1983). The burden then shifts to the insurer to prove that the loss is excluded from coverage under some policy exclusion. Mich. Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 925 (11th Cir. 1998). In order for a policy exclusion to preclude an insurer's duty to defend, the complaint must allege facts that clearly bring the entire case within the exclusion. Trovillion Construction & Development, Inc. v. Mid-Continent Cas. Co., No. 6:12-cv-914, 2014 WL 201678, at *4 (M.D. Fla. Jan. 17, 2014). Where a complaint alleges facts partially within and partially outside the scope of coverage, the insurer is required to defend the entire suit and the only way to avoid a duty to defend based on an exclusion is by showing that the allegations in the Underlying Complaint fall solely and entirely within that exclusion. See Lime Tree Vill. Cmty. Club Ass'n. Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405-07 (11th Cir. 1993); Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2011).

## B. Property Damage in the Underlying Complaint

Southern argues that summary judgment is proper because the Underlying Complaint fails to allege "property damage" as defined in the CGL Policies. Southern

notes that when considering insurance policies like the CGL Policies, the Eleventh Circuit has held that the "Florida Supreme Court has drawn a distinction between 'a claim for the cost of repairing the subcontractor's defective work,' which *is not* covered under a CGL policy, and 'a claim for repairing the structural damage to the completed [project] caused by the subcontractor's defective work,' which *is* covered." Amerisure Mut. Ins. Co. v. Auchter Co., 673 F.3d 1294, 1306 (11th Cir. 2012) (quoting J.S.U.B., 979 So.2d at 889-90)) (emphasis in original). Further, according to the Eleventh Circuit, "[a] claim limited to faulty workmanship or materials is one in which the sole damages are for replacement of a defective component or correction of faulty installation." J.S.U.B., 979 So.2d at 889-90 (internal quotations omitted). Accordingly, there is no property damage "[i]f there is no damage beyond the faulty workmanship," unless the faulty workmanship has damaged some "otherwise nondefective" component of the project. Id. at 889.

Southern concedes that the Underlying Complaint alleges defective work by Gallo but argues that the Underlying Complaint does not allege damage to some "otherwise nondefective" component of the Project; thus, its claims are for the replacement of a defective component or correction of a faulty installation and not property damage. (Dkt. 74 at 6) (citing Auchter, 673 F.3d 1294). In Auchter, the insured was a general contractor seeking coverage under its insurance policy for damage to a roof that was faultily installed by a subcontractor.[5] Auchter, 673 F.3d at 1294. The only damages alleged in the underlying suit were to correct the faulty roof supplied and completed by a subcontractor. Id. at 1307. Additionally, the interlocking nature of the roof tiles used in Auchter required a full replacement of the roof because piecemeal repair was impossible. Id. at 1307-08.

---

[5] The only parties in the declaratory judgment were the general contractor and its insured; the subcontractor was not a named party. Amerisure Mut. Ins. Co. v. Auchter Co., 673 F.3d 1294, 1306 (11th Cir. 2012).

The Eleventh Circuit found the insured's claim in <u>Auchter</u> was to replace a defective component rather than for property damage because the roof, and not the raw materials from which it was made, was the "otherwise nondefective" component. <u>Id.</u> According to the Eleventh Circuit, the roof was the component because the only alleged damages were to the roof and its repair required replacement in full. <u>Id.</u>

Conversely, KB Homes asserts that Southern's duty to defend is triggered by the Underlying Complaint's allegations of "damage to other building components," "damage to other property," "water intrusion," and "relocation of residents." <u>Id.</u> at 8-9 (citing <u>J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.</u>, 571 F. App'x 918, 926 (11th Cir. 2014)). The Court agrees with KB Homes' position. The Underlying Complaint alleges physical injury to tangible property by claiming that, in addition to faulty workmanship, defects in Gallo's work caused "damage to other building components," "damage to other property," and "property damage to the work of [KB Homes], other subcontractors and tradesman, and to other building components and materials." (Dkt. 4-1 ¶ 50). Further, the Underlying Complaint alleges loss of use of the Project because the defects in the subcontractors' work—including Gallo's—have "require[d] relocation of residents." <u>Id.</u> ¶ 51. Also, neither party alleges that Gallo's scope of work is analogous to a "defective component," or that damaged materials are interlocking and cannot be replaced piecemeal, as the court found critical in <u>Auchter</u>. Tellingly, in its own Motion to Dismiss, Southern does not argue that the Underlying Compliant fails to allege property damage, instead basing its sole argument against a duty to defend on two policy coverage exclusions. (Dkt. 64). Accordingly, the Court finds that the Underlying Complaint alleges property damage sufficient to trigger Southern's duty to defend Gallo in the Underlying Action.

Southern maintains that if the allegations in the Underlying Complaint trigger Southern's duty to defend pursuant to the CGL Policies, two relevant coverage exclusions preclude any such duty. The Court considers each exclusion in turn.

### C. Insurance Policy Coverage Exclusions

Southern contends that the allegations in the Underlying Complaint fall squarely[6] within the Your Work Exclusion or within the Exterior and Stucco Exclusion. KB Homes maintains that the allegations do not fall solely within either exclusion.

### 1. Damage to Your Work Exclusion

The Your Work Exclusion in the CGL Policies excludes coverage for "property damage" to "[Gallo's] work arising out of it or any part of it and included in the 'products-completed operations hazard.'" (Dkt. 61 at 10). Within the Your Work Exclusion, the CGL Policies define "your work" to include "[w]ork or operations performed by [Gallo] or on [Gallo's] behalf," and the "products-completed operations hazard" to mean Gallo's completed work. Id. Southern contends that the allegations in the Underlying Complaint fall squarely within the Your Work Exclusion because the damages sought by KB Homes arise out of alleged construction defects and deficiencies to Gallo's own work and the CGL Policies contain no subcontractor exception. (Dkt. 64 at 12-15). Southern employs J.S.U.B. and Auchter to argue that any distinction between the work of Gallo, KB Homes, and other contractors in the Underlying Complaint is meaningless because Southern's policies contain no subcontractor exception; thus, all alleged damages relate to the Project itself. See 979 So. 2d at 889; 673 F.3d at 1310. Under such principle, in order

---

[6] Southern uses the word "squarely." (Dkt. 64 at 2). As KB Homes notes, the standard for determining whether an exclusion bars coverage is solely and entirely. See Lime Tree Vill. Cmty. Club Ass'n. Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405-07 (11th Cir. 1993); Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2011).

for the allegations to fall solely outside of the Your Work Exclusion, the Underlying Complaint must allege damage to property other than the Project. The Court disagrees with Southern's position.

KB Homes argues that the subcontractor exception is irrelevant here because here the insured, Gallo, is a subcontractor and not a general contractor. KB Homes accurately notes that the cases cited by Southern involve an insured general contractor seeking coverage under an insurance policy for faulty work of a subcontractor. See Autcher, 673 F.3d at 1310; J.S.U.B., 979 So.2d at 889-90. The Court finds the analysis in Assurance Co. of Am. v. Lucas Waterproofing Co., Inc., relevant. 581 F. Supp. 2d 1201 (S.D. Fla. 2008). In Lucas, the subcontractor's scope of work was limited to waterproofing. Id. at 1211. The Lucas court found the subcontractor's limited scope of work to be determinative, holding that only damage to the waterproofing work arising from the faulty waterproofing work was barred from coverage pursuant to the Your Work Exclusion. Id. Specifically, the court found that the subcontractor's limited scope of work could in no way be construed to encompass the overall construction project at issue; therefore, damage to other parts of the subject property aside from the scope of the subcontractor's work was not barred by an exclusion substantially similar to the Your Work Exclusion. Id. As in Lucas, Gallo is a subcontractor responsible for a limited scope of work within the much larger general condominium project. Moreover, no reading of the Underlying Complaint allows the inference that Gallo's scope of work encompasses construction of the overall Project. Rather, the Underlying Complaint reflects Gallo's limited scope of work. Further, the Underlying Complaint alleges that alleged defects of Project subcontractors, including Gallo, "caused damage to other building components, damage to other property, loss of

use, and require[d] relocation of residents." (Dkt. 4-1 ¶ 50). Such alleged defects include, among other things, "water intrusion" and "property damage to the work of KB Homes, other subcontractors and tradesman, and to other building components and materials." Id. ¶ 50. Thus, damage beyond the scope of Gallo's work is alleged in the Underlying Complaint.

Southern also argues that this Court must make multiple inferences to find that Gallo's work resulted in damage to any part of the Project that was not Gallo's work or product as proscribed by Elite Homes. 160 F. Supp. 3d 1307 (M.D. Fla. 2016). However, in Elite Homes the insured was a single builder who performed all work on a single new structure; thus, any reference to "other property" necessarily referred to property outside of the insured's scope of work. Id. That is not the scenario before this Court where the Project involved general contractors and dozens of subcontractors who all performed work on the Project, independent of the work performed by Gallo. (Dkt. 4-1 ¶¶ 44, 45, 48).

Southern also contends that "bald assertions and buzzwords," such as allegations of "other property" and "water intrusion," in the Underlying Complaint are insufficient to demonstrate damage to work other than that completed by Gallo. (Dkt. 74 at 11-12). Southern cites State Farm Fire and Cas Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004) and Amerisure Insurance Company v. Gold Coast Marine Distributors, Inc., 771 So.2d 579, 582 (Fla. 4th DCA 2000) to support this contention; however, as noted by KB Homes, neither is persuasive because each analyzes whether an insurer's duty to defend was triggered by an alleged advertising injury. Steinberg, 393 F.3d at 1228 (considering

misappropriation of confidential business information); Gold Coast, 771 So.2d at 579-80 (discussing libel and slander).

Accordingly, the Underlying Complaint alleges damage to property other than that which was completed by Gallo and Southern has not demonstrated that the allegations against Gallo in the Underlying Complaint fall solely and entirely within the Your Work Exclusion. Thus, the exclusion does not bar coverage.

2. *Exterior Finishing System and Stucco Exclusion*

Alternatively, Southern asserts that it has no duty to defend Gallo because the allegations in the Underlying Complaint fall within the Stucco Exclusion in the CGL Policies. Under the Stucco Exclusion, policy coverage does not apply to any claim, "suit," action or proceeding for "property damage" which is in any way related to or arising out of an exterior finishing system or exterior stucco application. (Dkts. 64 at 15). Southern asserts that Gallo's scope of work was entirely limited to the exterior of the Project, including the use of an exterior finishing system and stucco; thus, coverage here is barred. Specifically, Southern points to fifteen alleged defects attributable to Gallo in the Underlying Complaint and claims that each clearly relate to the application of stucco— whether directly (i.e., mid-wall flashing detail or lap lath techniques), or indirectly (i.e., incorrect gaps in the wall panels). (Dkt. 74 at 14-15). However, other than the two parenthetical examples, Southern does not describe how each defect relates to stucco or an exterior finishing system. Moreover, Southern concedes that some of this work was not performed by Gallo. (Dkt. 64 at 10).

On the other hand, KB Homes argues that Gallo performed multiple scopes of work unrelated to stucco or an exterior finishing system and that the Underlying Complaint

contains allegations entirely unrelated to the application of either exterior. (Dkt. 61 at 12-13). KB Homes points to the following such allegations in the Underlying Complaint which caused alleged damage to the Project: framing work on buildings 15 and 20-4, house wrap work on buildings 20-23 and 33-39, "installing wall panels with gaps," and "failing to install sp2's[7] at each stud per structural drawings." (Dkt. 61 at 13).

Southern asserts that courts in multiple jurisdictions have universally upheld similar exclusions, even where the damages against the insured did not directly deal with the deficient exterior finishing system or stucco application. See Pine Oak Builders Inc. v. Great American Lloyds Ins. Co., 292 SW.3d 48, 61-64 (Tex. App. 14th Dist. 2006); First Mercury Ins. Co. v. Miller Roofing Enterprises, No. C11-0105-JCC 2013 WL 662970, at *1 (W.D. Wa. 2013); Trinity Universal Ins. Co. v. Employers Mutual Ins. Co., 592 F.3d 687, 692-93 (5th Cir. 2010); Crum & Forster v. Breese Corp., No. A-3880-13T1, 2016 WL 1453518, at *1-5 (N.J. Super. Ct. App. Div. 2016); National American Ins. Co. v. Gerlicher Co., LLC, 260 P.3d 1279, 1283-86 (Okla. Civ. App. Div.2 2011). KB Homes responds that each case cited by Southern relates to the use of a specific product, an exterior insulating and finishing system ("EIFS"), which is alternative to stucco and was not used on the Project. (Dkt. 75 at 12-14). Moreover, KB Homes correctly notes that the exclusion in each case is broader than the Stucco Exclusion because it extends to property damage arising from any exterior work performed by the insured if EIFS was used on the building, even if the insured did not install the EIFS, as long as an EIFS is used on any part of the structure. Pine Oak, 292 SW.3d at 61-64; First Mercury, at *1 (W.D. Wa. 2013); Trinity Universal, 592 F.3d at 692-93; Crum & Forster, at *1-5; Gerlicher, 260 P.3d at 1283-86.

---

[7] According to KB Homes, the references to "sp2's" means metal plates used to connect studs or other elements of the structural framing.

Southern relies solely on the allegations in the Underlying Complaint related to the use of fasteners to support its contention that the Project employed EIFS but fails to explain how a general allegation containing to fasteners proves that EIFS was installed. Moreover, Southern points to no allegation in the Underlying Complaint that specifically references the EIFS product. Furthermore, in each case relied on by Southern, the parties did not dispute that an EIFS was used on the project. Pine Oak, 292 SW.3d at 61-64; First Mercury, at *1 (W.D. Wa. 2013); Trinity Universal, 592 F.3d at 692-93; Crum & Forster, at *1-5; Gerlicher, 260 P.3d at 1283-86. Thus, the Court does not have sufficient evidence to find that an EIFS was used on the Project and cannot determine that each allegation against Gallo in the Underlying Complaint relates to or arises out of the installation of stucco or EIFS.

Accordingly, the Court finds that Southern's duty to defend Gallo in the Underlying Action is not barred by either the Your Work Exclusion or Stucco Exclusion in the CGL Policies.

### D. Relevant Policies

KB Homes maintains that even if Southern could prove that the Underlying Complaint's allegations fall solely within the Stucco Exclusion, Southern owes Gallo a duty to defend under the Umbrella Policies. (Dkt. 61 at 14). Southern does not contest the existence of the Umbrella Policies but argues against their relevance here and claims the Court is unauthorized to rule on them. (Dkt. 74 at 16). According to Southern, neither Southern nor KB Homes have pled for relief under any policy outside of the three policies attached to Southern's complaint; thus, any ruling on any other policies would be void. (Dkt. 74 at 17). Southern's original complaint in this action seeks a declaratory judgment

that Southern owed no duty to defend or indemnify Gallo in the underlying Action. (Dkt. 1). However, in its Motion for Summary Judgment Southern clarified the relief requested as a declaration that Southern does not owe a duty to defend or indemnify Gallo under the CGL Policies issued to Gallo in the Underlying Action. (Dkt. 64 at 17). Accordingly, the Court does not rule on the Umbrella Policies at this time.

### E. Southern's Duty to Indemnify

An insurer's duty to indemnify "must be determined by analyzing the policy coverage in light of the actual facts in the underlying case." Zurich, 314 F. Supp. 3d at 1299 (quoting J.B.D., 571 Fed. Appx. at 927). "[A]n insurer is only obligated to indemnify its insured for the portion of a judgment or settlement attributable to a covered claim." Zurich, 314 F. Supp. 3d at 1299 (citing Highland Holdings, Inc. v. Mid–Continent Cas. Co., No. 8:14-cv-1334-T-23TBM, 2016 WL 3447523, at *2 (M.D. Fla. June 23, 2016)). Thus, "'the duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims.'" Diamond State Ins. Co. v. Boys' Home Ass'n, Inc., 172 F. Supp. 3d 1326, 1342 (M.D. Fla. 2016) (quoting J.B.D. Constr., Inc., 571 Fed. Appx. at 927); see also Fid. Nat. Prop. & Cas. Co. v. Boardwalk Condo. Ass'n, Inc., No. 3:07CV278/MCREMT, 2010 WL 1911159, at *7 (N.D. Fla. May 12, 2010) ("[T]he duty to indemnify is not ripe for adjudication in a declaratory judgment action until there is a factual determination that the [insured] is liable in the underlying suit"); Pekin Ins. Co. v. Main St. Cons't., Inc., No. 106-cv-0961-TAB-DFH, 2007 WL 1597924, at *4 (S.D. Ind. June 1, 2007) (quotations omitted) (stating that "where there is a duty to defend, the duty to indemnify must await resolution of the underlying suits").

Southern argues that where there is no duty to defend based on the allegations of the underlying complaint, there is no duty to indemnify. See Fun Spree Vacations, Inc. v. Orion Ins. Co., 659 So. 2d 419, 422 (Fla. 3d DCA 1995). However, as the Court has found that Southern owes a duty to defend, this argument is inapplicable. KB Homes articulates that Florida law separates a duty to defend from a duty to indemnify because the duty to defend is based on the allegations in the underlying complaint and the duty to indemnify is determined by the facts adduced at trial or during discovery in the underlying litigation. See Farrer v. U.S. Fid. & Guar. Co., 809 So. 2d 85, 88 (Fla. Dist. Ct. App. 2002). There has been no factual determination as to liability in the Underlying Action as of the date of this Order. Thus, any determination regarding Southern's duty to indemnify Gallo requires a more complete record before the court. Accordingly, the Court finds that Southern's duty to indemnify Gallo is not ripe for adjudication.

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants KB Home Tampa's, KB Home Orlando's, and KB Home Fort Myers' Motion for Summary Judgment, (Dkt. 61), is **GRANTED** as to their request for a declaration in their favor that Plaintiff Southern owes a duty to defend Gallo in the Underlying Action under the CGL Policies.

2. Plaintiff Southern's Motion for Summary Judgment, (Dkt. 64), is **DENIED** as to its request for a declaration in its favor that it owes no duty to defend or indemnify Gallo in the Underlying Action under the CGL Policies.

3. The Clerk is directed to enter **FINAL JUDGMENT** in favor of Defendants KB Home Tampa, KB Home Orlando, KB Home Fort Myers, and Gallo.

4. After entry of final judgment, the Clerk shall terminate any pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this _18th_ day of December, 2018.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record